IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JEFFREY G. MESSINGER, et al.

        Plaintiffs,

v.                                                  CIVIL ACTION NO.  2:10-cv-000976

TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA, INC., et al.

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the first motion for summary judgment filed by Defendants, Toyota Motor Engineering Manufacturing, North America, Inc., Toyota Motor Manufacturing, Kentucky, Inc., Toyota Motor Sales, U.S.A. Inc., Toyota Motor North America, Inc., and Calty Design Research, Inc., ("Defendants"). For the reasons that follow, the motion [ECF 89] is **DENIED**.

                              I.      BACKGROUND

    A.  *Factual Background*

The facts, taken in the light most favorable to Plaintiff, Jeffrey G. Messinger, Administrator of the Estate of Harold H. Messinger ("Plaintiff"), are as follows.

On June 23, 2001, Plaintiff's father, Harold H. Messinger ("Mr. Messinger"), was involved in an accident while driving his 2001 Toyota Avalon ("the vehicle") in Cabell County,

West Virginia. (ECF 89-2.) Mr. Messinger, who was 82 years old at the time, was the sole occupant of the vehicle and died in the accident. (*Id.* at 2.)

According to the West Virginia Uniform Traffic Crash Report ("accident report"), Mr. Messinger's vehicle left the roadway edge, traveled through a grassy area, and then vaulted over a small embankment and became airborne before striking a tree limb. (*Id.* at 4.) The vehicle then began to roll and struck a telephone pole and came to rest on the roadway edge. (*Id.*) There was no evidence on either the roadway or grass surfaces to indicate that the driver applied brakes. (*Id.*) The accident report also contained statements of two witnesses, who indicated that the vehicle was traveling at a high rate of speed prior to the accident. (ECF 89-2 at 6.) Both witnesses estimated the speed at up to 90 miles per hour, and one of the witnesses stated that the vehicle passed him traveling at an accelerating speed. (ECF 89-2 at 6.) Plaintiff did not know his father to normally speed or overtake other vehicles that were traveling a normal speed limit. (ECF 89-1 at 54.)

After learning of the accident later that day, Plaintiff and his wife travelled to Huntington, West Virginia, to be with his sister and to take care of his father's affairs. (*Id.* at 31, 42.) On their way, Plaintiff and his wife went to the scene of the accident because Plaintiff wanted to see the scene and wanted to see if there was anything there that would help him understand what happened. (*Id.*) Plaintiff's desire to do so was part of his "engineer mentality." (*Id.* at 32.) Plaintiff took photographs of the scene, and retrieved some personal items of his father's that were at the accident scene. (*Id.* at 34.)

On his way back home that evening, Plaintiff went to the wrecker service where the car was towed. (*Id.* at 31) There, Plaintiff saw the car and took photographs of it. (*Id.* at 39.) He

did not inspect any components of the vehicle, and his visit was not an investigation, but "more of just curiosity of . . . what happened . . . and just trying to inform [himself]." (*Id.* at 39−40.)

Sometime shortly thereafter, Plaintiff again visited the scene of the accident (*id.* at 43−44), and also returned to the wrecker service (*id.* at 46−47). At the latter, he retrieved some personal effects from the vehicle and also took the vehicle's CD player and removed a few fuses from under the dashboard. (*Id.*) Plaintiff did not take the fuses for any particular reason (*id.* at 47-48), although he believed that they were good fuses which he may need (*id.* at 75).

Also shortly after the accident, Plaintiff met with Sergeant M.T. Wentz, the investigating officer who completed the accident report. (*Id.* at 89-1 at 62; ECF 89-2 at 3.) Plaintiff did so because he didn't have any good answers as to what had happened and why the vehicle was travelling at a high rate of speed. (ECF 89-1 at 62.) Plaintiff and Sergeant Wentz discussed possible explanations for the accident, and Sergeant Wentz suggested that for lack of any other explanation the investigators thought that it was some type of medical condition that caused Mr. Messinger to leave the highway. (*Id.* at 64, 137.)

Sometime later in 2001, Plaintiff and his sister sold the vehicle to Mr. Messinger's insurance company to take the salvage value. (*Id.* at 125, 138−139.) At the time, Plaintiff had no knowledge that anything might be wrong with the vehicle and wasn't concerned about the vehicle. (*Id.* at 136.)

Years later, sometime in February 2010, Plaintiff was driving home from work and listening to the news and heard a report about "the Toyota unintended acceleration issue, and all the research that had been done." (*Id.* at 53.) Hearing the report, Plaintiff felt, was "like somebody slapped me across the face" and an "awakening." At that moment, Plaintiff testified in his deposition, "it hit me that there was something wrong with the vehicle, because we never

3

had – we never had a good explanation of what happened that morning." (*Id.* at 53−54.) It had never occurred to Plaintiff before that moment that something might be wrong with the vehicle. (*Id.* at 54.)

When it became apparent to Plaintiff that there could possibly have been a defect with the vehicle, he started trying to locate the vehicle through title searches and other research. (*Id.* at 50.) He eventually found that the vehicle had been sold by the insurance company to an auto parts business in Kentucky shortly after the accident. (*Id.* at 50−51; 137−38) In February 2010, Plaintiff went to this auto parts business and learned that although the vehicle had been there, it had been parted out and what remained was crushed in 2007. (*Id.* at 51.) Plaintiff learned, however, that the business still had the vehicle's engine computer, as well as a flywheel and window motor. (*Id.* at 51.) Plaintiff purchased the engine computer, because he thought it might contribute something to an investigation of what happened. (*Id.* at 52, 57.)

In the period following February 2010, Plaintiff collected other information related to the accident and unintended acceleration issues with certain models of Toyota vehicles, and also spoke to the eyewitnesses listed in the accident report as well as volunteer firefighters who responded to the scene. (*Id.* at 92−106, 112−17, 128−33.) Additionally, after filing this lawsuit, Plaintiff purchased a 2001 Toyota Avalon like his father's vehicle to try to understand how the vehicle operated. (*Id.* at 17−18, 22.)

B. *Procedural Background*

Plaintiffs filed this wrongful death action against Defendants on August 2, 2010, invoking this Court's diversity jurisdiction. (ECF 1; ECF 1-1.) Plaintiff is a citizen of West Virginia and Defendants are all out-of-state corporations with their principal places of business in states other than West Virginia. (ECF 1 at 1−2; ECF 10 at 2.) The United States Judicial

Panel on Multidistrict Litigation ("MDL Panel") initially transferred the case to the United States District Court for the Central District of California. (ECF 21.) Thereafter, the case was remanded after the focus of the MDL narrowed primarily to claims implicating the use of an electronic throttle control systems ("ETCS"), and the district court identified this case as one that involved a vehicle that was not alleged to use an ETCS. (ECF 22.)

On August 26, 2013, Defendants filed the instant motion for summary judgment. (ECF 86.) Thereafter, upon Plaintiff's motion, the Court amended the Scheduling Order and, among other changes, reset the deadlines by which responses to dispositive motions were to be filed. (ECF 104.) As addressed on the record during a February 28, 2014, telephonic status conference (ECF 120), the only issue before the Court in the instant motion for summary judgment is Defendants' argument that Plaintiff's claims are time-barred. All of the other arguments raised by Defendants' motion have been mooted by subsequent developments in the case. Plaintiffs have responded (ECF 125) and Defendants' have replied (ECF128) and Defendant's motion is now ripe for adjudication with respect to the remaining claim.

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. See Fed. R. Civ. P. 56(e). A court must neither resolve disputed facts nor weigh the evidence. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995). Nor may a court make determinations of credibility. *Sosebee*

*v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The moving party bears the initial burden of showing that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322–23.  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."  *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718–19 (4th Cir. 1991).  The non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### III.  DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiff filed his Compliant outside the applicable statute of limitations.  (ECF 90 at 12.)  Defendants assert that Plaintiff's cause of action accrued on the date of the accident, and that the statute of limitations for Plaintiff's claims was not tolled by the discovery rule.  (*Id.* at 12, 14.)  Even if such rule applied, Defendants contend, the statute of limitations nonetheless began to run shortly after the date of the accident.  (*Id.* at 12, 18.)  Defendants also argue that neither the fraudulent concealment nor any other tolling doctrine applies.  (*Id.* at 14−19.)

In response, Plaintiff argues that his claims are not time-barred because the discovery rule tolled the applicable statute of limitation until he became aware of the cause of action in

February 2010. (ECF 125 at 19−21.) Plaintiff further argues that the statute of limitation was also tolled because Defendants fraudulently concealed certain facts that prevented Plaintiff from discovering the cause of action. (*Id.* at 17.)

The West Virginia Supreme Court of Appeals ("WVSCA") has adopted a five-step analysis for determining whether a cause of action is time-barred:

> First, the court should identify the applicable statute of limitation for each cause of action.
>
> Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred.
>
> Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997).
>
> Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled.
>
> And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 5, *Dunn v. Rockwell*, 689 S.E.2d 255, 258 (W. Va. 2009).

First, Plaintiff seeks recovery for wrongful death, among other damages, and asserts a variety of claims including negligence, product liability, breach of warranty, and fraud against Defendants. (ECF 1.) West Virginia Code § 55-2-12(b) provides that every personal action for damages for personal injuries shall be brought within two years after the right to bring such

7

action has accrued. *See Clemens v. Soyoola*, 2:11-cv-00457, 2012 WL 5194070, at *3 (S.D. W. Va. Oct. 19, 2012) (Copenhaver, J.) ("When federal jurisdiction is predicated solely upon diversity of citizenship, state law provides the governing statue of limitations.") As the parties agree, section 55-2-12(b) applies to Plaintiff's claims. *See Harrison v. Davis*, 478 S.E.2d 104, 108 n.8 (W. Va. 1996) (stating that personal injury negligence actions are governed by West Virginia Code § 55–2–12(b), which is a two year period); *Hickman v. Grover*, 358 S.E.2d 810, 812 (W. Va. 1987) (finding that West Virginia Code § 55–2–12's two year statute of limitations applies to products liability claims); *Taylor v. Ford Motor Co.*, 408 S.E.2d 270, 274 (W. Va. 1991) (finding that personal injury claims based on a breach of an express or implied warranty are governed by § 55–2–12's two year statute of limitations); *Brown v. Community Moving & Storage, Inc.*, 455 S.E.2d 545, 547 n.3 (W. Va. 1995) (finding that the statute of limitations for a fraud claim is two years). Accordingly, in this case, the statute of limitations for Plaintiff's claims is two years.

Second, Plaintiff alleges that Mr. Messinger's vehicle unintentionally accelerated resulting in the accident in which he died. (ECF 1.) Although the parties dispute *the cause* of the accident, there is no issue of material fact as to when the accident occurred, and, therefore, when the requisite elements of the causes of action asserted by Plaintiff would have occurred. Accordingly, the requisite elements of Plaintiff's claims arose on June 23, 2001.

Third, the Court must apply the discovery rule to determine when the statute of limitations began to run by determining when Plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action. Whether a plaintiff "knows of" or "discovered" a cause of action is an objective test, focused upon whether a reasonable person would have known, or by the exercise of reasonable diligence should have

known, of the elements of a possible cause of action. *Dunn*, 689 S.E.2d at Syl. Pt. 4. The WVSCA explained how to apply the discovery rule in *Gaither v. City Hosp., Inc.*:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syl. Pt. 4, 487 S.E.2d 901, 903 (W. Va. 1997). Generally, this question is a question of fact for the fact-finder. Syl. Pt. 3, *Stemple v. Dobson*, 400 S.E.2d 561 (W. Va. 1990); *see also Clemens*, at *4 (observing that the WVSCA "has repeatedly observed that the discovery rule generally does not provide an appropriate basis for summary adjudication"). Additionally, the WVSCA has stated that "[w]here a plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding the potential breach." *McCoy v. Miller,* 578 S.E.2d 355, 359 (W. Va. 2003).

Here, Plaintiff argues that he is entitled to the benefit of the discovery rule because he did not know and with the exercise of reasonable diligence could not have known that Defendants' conduct had a causal relation to the injury Plaintiff suffered. Importantly, Plaintiff's contention is not that he was unaware until February 2010 of the particular design defect in the vehicle that he now alleges, but rather that it was not until this time that he knew or should have known that *the vehicle itself* had a causal relation to the injury.

In support of this position, Plaintiff offers statements from his deposition in which he testified that "it had never occurred to [him] before" that there may have been something wrong with the vehicle prior to February 2010, when he first heard media reports regarding a recall of

9

Toyota vehicles for problems related to sudden acceleration. Plaintiff also observes that the investigating officer on the accident report indicated to him that "[f]or lack of any other explanation . . . they just thought it was some type of medical condition that caused [Mr. Messinger] to leave the highway" and that Plaintiff was led to believe that this "default conclusion" may have been the cause of the accident. (ECF 89-1 at 137.) Plaintiff further argues that if he had had reason to suspect that the vehicle was in some way causally related to the accident, he would not have permitted it to be sold, and notes that after he became aware that the vehicle could have had a defect that led to sudden acceleration, he began an investigation and even purchased an exemplar model of the same vehicle to understand how it works. Plaintiff avers that to the extent that he took photographs of the accident scene and vehicle and spoke with the investigating officer, such actions were done out of curiosity and seeking an explanation for the accident, and not because he had reason to believe that the vehicle had caused the accident and was conducting an investigation.

When such evidence is viewed in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether a reasonable person exercising reasonable diligence should have known that Defendants' conduct was causally related to the accident, as well as whether the accident placed Plaintiff on notice of the possible breach by Defendants of the duty of care so as to trigger a duty to investigate.

*Hickman v. Grover*, upon which Defendants rely, is not to the contrary. In *Hickman*, the plaintiff was injured when a portable air tank being filled with air exploded and fragments struck him. 358 S.E.2d at 811. Two days after the accident, a fragment of the air tank showing the tank's manufacturer was found. *Id.* Plaintiff sued the individual who was filling the tank, and

later, after the two-year statute of limitations period had expired, also sought to sue the manufacturer of the tank. *Id.*

The WVSCA held that the discovery rule did not toll the statute of limitations with respect to the plaintiff's suit against the manufacturer of the tank. The plaintiff, the WVSCA explained, knew of the causal relation to his injuries as of the day he was injured because he, and indeed "everyone," knew that the air tank had exploded and that fragments of the tank had struck him. *Id.* at 814. Therefore, once the plaintiff also learned of the manufacturer's identity two days later, that was date on which his cause of action accrued. *Id.*

Here, in contrast, Plaintiff argues that he did not even know, nor should he have known, that *the vehicle* had *any* causal relation to Mr. Messinger's death until February 2010. Indeed, similar to the situation presented here, in considering the question of what exactly was necessary for the plaintiff to have "discovered" his cause of action the *Hickman* Court observed that some "plaintiffs will realize they are injured, but have no reason to connect the product the injury." *Id.* at 812−813. The WVSCA explained that the discovery rule protects such claims from the bar of the statute of limitations. *Id.* at 814.[1]

Plaintiff's argument is more analogous to this Court's decision in *Short v. Yamaha Motor Corp., U.S.A.*, 2:11-CV-00999, 2012 WL 1365443 (S.D. W. Va. Apr. 19, 2012) (Goodwin J.). In *Short*, the plaintiff was injured when the ATV on which he was riding rolled over during a turn. *Id.* at 1. Nearly three years after the accident, the United States Consumer Product Safety Commission issued a notification warning the public not to use that particular ATV unless

---

[1] As the Defendants observe (ECF 128 at 4−5), the *Hickman* Court declined to add a requirement to product liability claims that would toll the statute of limitations until the plaintiff knew or should have known that the product was defective as a result of the conduct of its manufacturer. 358 S.E.2d at 814. Contrary to Defendants' contention, however, such a requirement is not implicated here. Plaintiff's contention, as noted above, is not that he knew that the vehicle had a causal relationship to his injury but did not know that it was defective as a result of Defendants' conduct. Rather, Plaintiff contends that he did not know nor should he have known that the vehicle had any causal relation to his injury.

11

certain repairs were made. *Id.* at 2. In a Memorandum Opinion and Order by Judge Goodwin, the Court found that a genuine issue of material fact existed as to whether the plaintiff reasonably should have known of the existence of a possible cause of action against the manufacturer of the ATV as a result of the accident. *Id.* at 3−4. Therefore, the Court found, summary judgment was inappropriate on the question of whether the discovery rule applied to toll the statute of limitations with respect to the plaintiff's claims against the manufacturer of the ATV. *Id.* Specifically, the Court observed that, as here, the plaintiff was claiming that although he knew he was injured, he did not know that his injuries were connected to the ATV and the manufacturer's design, rather than, for example, human error. *Id.* The Court also distinguished *Hickman* and noted that the instant situation was "distinct from other product liability cases in which the WVSCA refused to apply the discovery rule because, in this case, the plaintiff is not claiming that he did not know that the product was defective; rather he is claiming that he did not know that the [ATV] was the cause of his injury." *Id.* at 3.

The Court is not persuaded otherwise by Defendants' observation that Mr. Messinger's 2001 Toyota Avalon had a mechanical throttle, and not an electronic throttle control system that is the subject of current MDL litigation and the media report that Plaintiff heard. (ECF 90 at 5 and n.3.) Crediting Plaintiff's testimony, as the Court must for purposes of summary judgment, a reasonable juror could find that the media discussion that Plaintiff heard in February 2010 would put a reasonably prudent person on notice that *the vehicle* could have been the cause of the accident due to sudden acceleration, even if the precise defect identified was not identical to the one ultimately alleged.

Nor is the Court persuaded otherwise by Defendants' suggestion that this finding would permit any person that was involved in an accident in which speed was a factor to successfully

12

proceed in a suit against Defendants. (ECF 90 at 14; ECF 128 at 7.) Such a conclusion is clearly contradicted by the fact-sensitive nature of the discovery rule's application, and the WVSCA's consistent explanation that determining the point in time at which a plaintiff knew or by the exercise of reasonable diligence should have known of the elements of a possible cause of action is a question of fact to be answered by the jury. *Stemple*, 400 S.E.2d at 561 Syl. Pt. 3; *Dunn*, 689 S.E.2d at Syl. Pt. 5; *see also Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 852 (W. Va. 2010) ("[W]e note that this Court has clearly established that the determination of when the plaintiff possessed the requisite knowledge to trigger the running of the statute of limitations is a question of fact for the jury. . . . [T]he question is proper for the court only '[w]here there are undisputed facts from which only one conclusion may be drawn[.]'"). This is not a record of "undisputed facts from which only one conclusion may be drawn," but rather one that indicates that a genuine dispute of material fact exists as to when Plaintiff knew or should have known of the elements of a possible cause of action.

Moreover, the implication of Defendants' argument is that any time speed could be a factor in an accident the injured party is necessarily on notice that a problem with the vehicle could have a causal relationship to the accident. Such an far reaching implication, however, is contrary to the WVSCA's explanation that an affirmative duty to investigate is triggered where the plaintiff both knows of his injury *and* the facts surrounding that injury *place him on notice* of the possible breach of a duty of care. *McCoy*, 578 S.E.2d at 359 (emphasis added).

In consideration of the foregoing, the Court finds that the evidence presented in support of and opposition to Defendants' first motion for summary judgment presents a genuine issue of material fact regarding whether a reasonable person would have known that he or she had a possible cause of action against Defendants arising out of the June 23, 2001 accident.

Reasonable minds could disagree about whether a person exercising reasonable diligence should have known that the vehicle was casually related to accident. Indeed, in light of such evidence, a reasonable juror could find that it was not until February 2010 that Plaintiff was on notice of a possible cause of action against Defendants and thus had an affirmative duty to investigate. Because Plaintiff filed this suit in August of 2010, summary judgment is, therefore, inappropriate. *See Dunn*, 689 S.E.2d at 265 ("When the resolution of a step requires resolution of a genuine issue of material fact, the issue should be submitted to the finder of fact."); *see also Short*, 2012 WL 1365443 at *4 (explaining that "[w]hen there is no apparent reason to connect the product with the plaintiff's injury, the discovery rule applies").

Having determined that a genuine dispute of material fact exists with respect to whether Plaintiff is entitled to the benefit of the discovery rule, the Court has no occasion to reach the question of whether Defendants fraudulently concealed facts that prevented Plaintiff from discovering or pursuing the cause of action. *See Dunn*, 689 S.E.2d at Syl. Pt. 5.

### IV. CONCLUSION

For these reasons, the Defendants' motion for summary judgment [ECF 89] is **DENIED**. The Court will address Defendants' second motion for summary judgment [ECF 98] consistent with the timeframes set forth in the Court's Third Amended Scheduling Order [ECF 124].

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record.

ENTER: March 27, 2014

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE